UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
OMAR SILER,                                                   **FIRST AMENDED COMPLAINT**

                                                                         **15 CV 189 (ER)**
                                                                          **ECF Case**
             Plaintiff,

    vs.

The CITY OF NEW YORK,
NEW YORK CITY DETECTIVES
MARK MCDONALD, Shield 6272,
JEFF HARRIS, Shield 1542,
GREGORY CARTY, Shield 2497,
MANUEL CORDOVA, Shield 225,
CHRISTIAN MCBREARTY, Shield 7985,
SERGEANT ROBERT KELLY, Shield 3349, and
UNDERCOVER OFFICERS C0222 and C0301
in their individual and official capacities,
                                                                    **JURY TRIAL DEMANDED**
             Defendants.
------------------------------------------------------------x

Plaintiff Omar Siler, by his attorney, Cyrus Joubin, complaining of the Defendants, respectfully alleges as follows:

## PRELIMINARY STATEMENT

1. This civil rights action arises from the false and violent arrest, anal fingering, and unlawful strip search of Omar Siler ("Plaintiff") at the hands of NYPD Narcotics Detectives, who baselessly suspected Plaintiff of being a drug-dealer. Plaintiff asserts constitutional claims pursuant to 42 U.S.C. § 1983 ("Section 1983") against the individual defendants for false arrest and imprisonment, excessive force, illegal strip search, and failure to intervene, and a *Monell* claim against the City of New York for the same constitutional violations. Additionally, Plaintiff asserts analogous claims under New York Law against the individual defendants, and against the City of New York

under the doctrine of *respondeat superior*. Plaintiff seeks compensatory and punitive damages, costs, disbursements, and attorney's fees pursuant to applicable state and federal civil rights law.

## JURISDICTION

2. This action is brought pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 and the Fourth Amendment to the United States Constitution. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343 (a)(3) and (4), this being an action seeking redress for the violation of Plaintiff's constitutional and civil rights.

3. Plaintiff further invokes this Court's supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over any and all state law claims and causes of action which derive from the same nucleus of operative facts and are part of the same case or controversy which gives rise to the federally based claims and causes of action.

## VENUE

4. Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391(b) because the acts complained of occurred in this district.

## JURY DEMAND

5. Plaintiff respectfully demands a trial by jury on each and every one of his claims as pled herein, pursuant to Fed. R. Civ. P. 38(b).

## PARTIES

6. Plaintiff Omar Siler is an African-American man, a United States citizen, and at all relevant times a resident of the City of New York, State of New York.

7. The individually named defendants Detective Mark McDonald (Shield # 6272) ("Det. McDonald"), Detective Jeff Harris (Shield # 1542) ("Det. Harris"), Detective Gregory Carty (Shield # 2497) ("Det. Carty"), Detective Manuel Cordova (Shield # 225) ("Det. Cordova"), Detective Christian McBrearty (Shield # 7985) ("Det. McBrearty"), Sergeant Robert Kelly (Shield # 3349) ("Sgt. Kelly"), Under Cover Officer No. C0222 ("C0222"), and Under Cover Officer No. C0301 ("C0301") (collectively, the "individual defendants") are and were at all times relevant herein officers, employees and agents of the New York City Police Department ("NYPD").

8. On the date of the incident giving rise to this complaint, the individual defendants were assigned to the Narcotics Borough Manhattan North.

9. Each individual defendant is sued in his individual and official capacity. At all times mentioned herein, each individual defendant acted under the color of state law, in the capacity of an officer, employee, and agent of defendant City of New York ("Defendant City").

10. Defendant City is a municipality created and authorized under the laws of New York State. It is authorized by law to maintain, direct, and to supervise the NYPD, which acts as its law enforcement agent and for which it is ultimately responsible.

## NOTICE OF CLAIM

11. Plaintiff served a Notice of Claim on the Comptroller of the City of New York within ninety days of the incident, being assigned Claim # 2014PI019828. At least 30 days have elapsed since the service of the Notice of Claim, and adjustment and payment has been neglected or refused.

12.   The City of New York demanded a hearing pursuant to General Municipal Law § 50-h, which hearing was held on August 20, 2014.

13.   This action has been commenced within one year and ninety days after the occurrence of the event upon which the claims are based.

## STATEMENT OF FACTS

14.   On Saturday May 31, 2014, in the early afternoon, Plaintiff was hanging out – playing videogames, watching TV, talking – with his friend Jonathan Chappelle ("Mr. Chappelle") at Mr. Chappell's apartment ("the Apartment"), located at 129 West 133rd Street, Apartment 4C.  Also inside the Apartment was Mr. Chappelle's mother, Barbara Chappelle ("Mrs. Chappelle").

15.   After about an hour inside the Apartment, Plaintiff took a break and went outside, walking down the block to Lenox Avenue, where Plaintiff went inside a liquor store and a clothing store.  Plaintiff bought a lottery ticket at the liquor store and a white t-shirt at the clothing store.

16.   After purchasing these items, Plaintiff walked back to the apartment building at 129 West 133 Street ("the Building").  Outside the Building, which had a locked front door, Plaintiff buzzed the Apartment, but nobody responded or buzzed him in, so the door remained locked and Plaintiff was unable to go inside.

17.   Waiting for the door to open, Plaintiff sat on the stoop in front of the Building, and browsed on his smart phone.  As Plaintiff sat there, doing nothing wrong, he aroused suspicion in a group of undercover Narcotics Officers and Detectives – including the individual defendants – who were nearby observing him.

18. After a few minutes on the stoop, Plaintiff saw a man leaving the Building and asked him to hold the door open, which the man did. As Plaintiff approached the open door, he saw an unknown man (one of the individual defendants, in plain clothes) on the sidewalk suddenly charge toward him, aggressively targeting the Plaintiff, as if wanting to hurt Plaintiff.

19. Trying to avoid harm and danger, unaware that the individual defendant was an NYPD officer, Plaintiff rushed inside the Building – chased by that defendant – and ran up the stairs to the roof of the Building.

20. From the roof of the Building, Plaintiff went down the fire escape to the Building's backyard ("the Backyard"). There, Plaintiff heard a voice yelling, "Police! Get on the ground!" Plaintiff saw a couple figures behind a gate on 134th Street, including another individual defendant, who had his gun drawn toward Plaintiff and ordered Plaintiff to get on the ground.

21. Plaintiff immediately complied with the order, getting down on his knees and lying stomach down on the ground, with his arms spread out, and his face in the dirt and gravel.

22. When Plaintiff tried shifting his head because the rocks hurt his face, the individual defendant with his gun drawn yelled – "Put your face down! Move again, and I will shoot you!"

23. It took the individual defendants a few minutes to figure out how to get to the Backyard, where Plaintiff, frightened for his life, was frozen on the ground.

24. Plaintiff then heard another individual defendant coming toward him angrily, cursing at Plaintiff, calling him a "motherfucker," even though Plaintiff posed no danger,

had done nothing unlawful, and had neither said nor done anything to offend that defendant.

25. Once he reached Plaintiff, that defendant unleashed his mad fury and started kicking and stomping Plaintiff on his torso, shoulder, and head repeatedly.

26. Plaintiff – on the ground, face in the dirt – was defenseless and had done nothing to justify such a brazen and senseless act of violence.

27. After kicking Plaintiff repeatedly, that defendant yanked Plaintiff's left arm while pressing his foot on Plaintiff's neck, as if trying to rip off Plaintiff's arm.

28. Plaintiff in no way resisted arrest or behaved aggressively. He had complied with the individual defendants' commands. The arm-yanking defendant, if he wished, could have simply handcuffed Plaintiff behind his back without any force.

29. Feeling his stretched arm in pain, his face bleeding, his head pounding, Plaintiff cried, "What are you doing? I'm not resisting." The defendant replied, "Shut the fuck up," his angry face and part-buzzed, part-slicked back silver hair haunting Plaintiff's vision.

30. That defendant then handcuffed Plaintiff behind his back and led him through the Building. Outside, in front of the Building, Plaintiff saw the other individual defendants.

31. Det. Harris asked Plaintiff why he ran away, to which Plaintiff replied that he was being chased and had no idea they were Police.

32. The individual defendants baselessly suspected that Plaintiff had drugs on him, and they watched as one of the individual defendants strip-searched Plaintiff in a non-traditional and obscene way. That defendant pulled down Plaintiff's pants and put

his hands down Plaintiff's underwear, using his fingers to probe Plaintiff's anus for drugs.

33. No drugs were recovered. Nothing unlawful, no evidence of any wrongdoing was on Plaintiff's person or anywhere near Plaintiff.

34. Nevertheless, the individual defendants hauled Plaintiff into the NYPD van ("the Van"), where he remained for about six hours as the Van drove around and filled up with other arrestees.

35. Afterwards, Plaintiff was transported to the Housing Police Service Area 6 precinct ("the Precinct"), located at 2770 Frederick Douglass Blvd., where he was processed, photographed, and fingerprinted, with his property ($41 cash and a cell phone) vouchered.

36. At the Precinct, Det. McDonald, Det. Harris, Sgt. Kelly, and the other individual defendants collaborated and concocted a false narrative about Plaintiff making a narcotics sale.  When they later submitted this false narrative to the Manhattan District Attorney's Office ("the DA"), the DA refused to bring any charges against Plaintiff because the individual defendants' fabrication was so obvious.

37. Also at the Precinct, Plaintiff was strip searched, this time in the traditional manner, with no fingering.  Plaintiff complied with all commands during the strip search. Following instructions, he pulled down his pants and underwear, bent over, and coughed; he moved his testicles so the individual defendants could have a clear look; and he stood still while bent-over to prove he had nothing hidden in his private areas.

38. When Plaintiff was taken to the holding cell inside the Precinct, Det. Harris tried eliciting a confession or admission from Plaintiff, lying and saying that he saw

Plaintiff make a drug sale; that if Plaintiff just said what he did wrong, "I'll try to help you." Plaintiff credibly and plausibly denied the accusation, insisting on his innocence, saying nothing suspicious or incriminating, speaking the truth the entire time.

39. At the Precinct, Plaintiff was issued a Property Clerk Invoice, number 1000504183 ("the Invoice") because $41 (two $20 bills, and one $1 bill) was recovered from Plaintiff and vouchered as "arrest evidence." The Invoice, dated 6/1/2014, states that the $41 is "believed to be proceeds from narcotic transactions," and specifies as the offense committed New York Penal Code Section 220.16 (criminal possession of a controlled substance in the third degree, a class B felony).

40. The Invoice gives the Arrest Number – M14648619 – and states the roles of various officers involved in the arrest and processing of Plaintiff. Specifically, Det. McDonald is named as the Invoicing Officer; Det. Harris as the Arresting Officer; and Sgt. Kelly as the Officer approving the Invoice.

41. After being in the Precinct past midnight – the Invoice was approved at 1:46 AM on June 1, 2014 – Plaintiff was transported to Central Booking in Manhattan.

42. The DA declined to bring any charges against Plaintiff in connection to the alleged felonious drug sale. Plaintiff was never arraigned on the false, fabricated, and bogus drug charges. The specific charges that were submitted by the individual defendants to the District Attorney's Office were Penal Law Section 220.16(01) and Penal Law Section 220.39(01).

43. However, Plaintiff had an outstanding warrant for an unresolved public urination case, requiring him to appear before a Criminal Court Judge. On the afternoon of June 1, 2014, around 3 PM, Plaintiff appeared before the Judge, who instantly vacated

the warrant and dismissed the public urination case, allowing Plaintiff to leave Criminal Court a free man.

44. After leaving Court, Plaintiff went to the Harlem Hospital ("the Hospital") Emergency Room because his body was in pain, and he had been suffering from a severe headache ever since Det. Harris kicked his head.

45. At the Hospital, a series of tests were conducted on Plaintiff, including a CT scan of his brain and x-rays of his ribs, spine, and shoulder. The treating physicians noted the abrasion on Plaintiff's left cheek and tenderness around Plaintiff's upper body.

46. Most significantly, Plaintiff was found to have a "fracture deformity of the right lamina papyracea," which is a thin bone plate behind one's eyes that can easily fracture with impact.

47. To this day, Plaintiff suffers headaches because of the repeated blows to his head inflicted by one of the individual defendants, though the frequency of the headaches has diminished since the incident.

48. Shortly after leaving Harlem Hospital, Plaintiff spent hours retrieving his vouchered phone and $41, first getting a Decline to Prosecute form, then going from the Manhattan District Attorney's Office Property Return Unit to the Property Division at 1 Police Plaza.

49. The NYPD failed to supervise and discipline the individual defendants despite their histories of malicious and mendacious behavior, ignoring the risk that they would engage in future misconduct, thereby encouraging them to continue to abuse their powers and violate the rights of civilians.

9

50. There is a systemic failure to identify, discipline, and supervise NYPD officers and detectives who fabricate charges, a failure so widespread, obvious, and tolerated as to constitute a custom and policy of Defendant City.

51. The NYPD's flaccid response to lying officers and detectives – particularly in the context of filing false charges – constitutes an irrational custom and policy that fosters a culture of mendacity in the NYPD.

52. Proportionate and appropriate discipline sends a message to NYPD employees that they are not above the law and are accountable to the people whom they serve. But when it comes to making false statements on court documents, NYPD officers and detectives virtually never face serious discipline.

53. The Civilian Complaint Review Board ("CCRB") has no jurisdiction to investigate allegations of fabricated statements by NYPD officers in criminal court documents. Investigating, controlling, and punishing this type of wrongdoing is the responsibility of the NYPD.

54. The inadequacy of NYPD's supervision and discipline with respect to dishonesty in the filing of criminal charges is exacerbated by the pressure on police officers to meet arrest quotas, or "performance goals," which pressure officers to arrest people and file charges unlawfully, a pressure not tempered by adequate safeguards that ensure citizens are not wrongfully arrested and charged.

55. As a direct and proximate cause of the said acts of the Defendants, Plaintiff suffered the following injuries and damages:

    a. Violation of his constitutional rights under the Fourth Amendment to the United States Constitution;

    b.   Physical injury;

    c.   Severe emotional trauma, distress, degradation, and suffering;

## SECTION 1983 CLAIMS

## FIRST CLAIM

**Deprivation of Federal Civil Rights Under Section 1983**

56. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

57. All of the aforementioned acts of Defendants, their agents, servants and employees, were carried out under the color of state law.

58. All of the aforementioned acts deprived Plaintiff of the rights guaranteed to citizens of the United States by the Fourth Amendment to the Constitution of the United States of America, and in violation of 42 U.S.C. § 1983.

59. The individual defendants acted willfully, knowingly, and with the specific intent to deprive Plaintiff of his constitutional rights secured by 42 U.S.C. § 1983, and by the Fourth Amendment of the United States Constitution.

60. As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged.

## SECOND CLAIM

**False Arrest Under Section 1983**

61. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

62. By the actions described above, Defendants deprived Plaintiff of his federal civil rights, including his Fourth Amendment right to be secure in his person against unreasonable searches and seizures, specifically his right to be free of false arrest.

63. As detailed above, the individual defendants intentionally arrested and detained Plaintiff without probable cause, without a warrant, without privilege or consent.

64. As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged .

## THIRD CLAIM

### Illegal Strip Search Under Section 1983

65. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

66. By the actions described, the Defendants deprived Plaintiff of his Fourth Amendment right to be free of unreasonable or unwarranted restraints on personal liberty, specifically his right to be free of unlawful searches of his person.

67. The strip search of Plaintiff – an extreme invasion of privacy and bodily dignity – took place without probable cause to arrest Plaintiff, and without probable cause to believe that a weapon or contraband was secreted in his anus.

68. As a direct and proximate result of the aforementioned conduct of the individual defendants, Plaintiff sustained the damages and injuries hereinbefore alleged .

## FOURTH CLAIM

### Failure to Intervene Under Section 1983

69. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

70. Each and every individual defendant had an affirmative duty to intervene on Plaintiff's behalf to prevent the violation of his constitutional rights by other law enforcement officers.

71. The individual defendants failed to intervene on Plaintiff's behalf to prevent, end, or truthfully report the violations of his constitutional rights despite knowing about such violations and having had a realistic opportunity to do so.

72. As a direct and proximate result of the aforementioned conduct of the individual defendants, Plaintiff sustained the damages and injuries hereinbefore alleged .

## FIFTH CLAIM

### Municipal Liability Under Section 1983

73. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

74. By the actions described, the Defendant City deprived Plaintiff of his Fourth Amendment right to be free of false arrest, excessive force, and illegal abuse through its failure to train, supervise, and discipline mendacious and malicious officers; and through its fostering a culture of abuse and dishonesty among those who wield considerable power over the lives of everyday citizens.

75. As a direct and proximate result of the acts of Defendant City, Plaintiff sustained the other damages and injuries hereinbefore alleged.

## SIXTH CLAIM

### Excessive Force Under Section 1983

73. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

74. By the actions described, the individual defendants deprived Plaintiff of his Fourth Amendment right to be free of unreasonable or unwarranted restraints on personal liberty, specifically his right to be free from excessive and unreasonable force.

75. As a direct and proximate result of the aforementioned conduct of the individual defendants, Plaintiff sustained the damages and injuries hereinbefore alleged.

## PENDENT STATE CLAIMS

### FIRST CLAIM

**False Imprisonment under N.Y. State Law**

76. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

77. The individual defendants intentionally arrested and detained Plaintiff without probable cause, without a warrant, and without privilege or consent.

78. As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged .

### SECOND CLAIM

**Battery Under N.Y. State Law**

79. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

80. As detailed above, the individual defendants intentionally touched Plaintiff in an offensive and harmful manner, and they intentionally subjected him to offensive and harmful contact.

81. As a direct and proximate result, Plaintiff sustained the damages and injuries hereinbefore alleged.

### THIRD CLAIM

**Unreasonable Search and Seizure Under New York State Constitution Art. I § 12**

82. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

83. Article 1, Section 12, of the New York State Constitution declares the right to be free from unreasonable searches and seizures.

84. Without probable cause and without Plaintiff's consent, the individual defendants arrested Plaintiff, searched his person, took his property, confined him, and initiated false charges against him.

85. As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged .

### FOURTH CLAIM

**Negligent Hiring/Training/Retention of Employment Services Under N.Y. State Law
(Against Defendant City of New York)**

86. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

87. Defendant City owed a duty of care to Plaintiff to prevent the false arrest, malicious prosecution, and mental and emotional abuse sustained by Plaintiff.

88. Upon information and belief, all of the individual defendants were unfit and incompetent for their positions.

89. Defendant City knew or should have known through the exercise of reasonable diligence that the individual defendants could potentially cause harm.

90. Defendant City's negligence in hiring, screening, training, disciplining and retaining the individual defendants proximately caused Plaintiff's injuries.

91. As a result of its negligent conduct, Defendant City has directly and proximately caused the damages and injuries hereinbefore alleged.

## FIFTH CLAIM

### Respondeat Superior Under N.Y. State Law

92. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

93. Defendant City is the employer of the individual defendants.

94. Under the doctrine of *respondeat superior*, the Defendant City is responsible for the wrongdoing of its employees acting within the scope of their employment – in this case, the false imprisonment, malicious prosecution, and unreasonable search and seizure committed by the individual defendants against Plaintiff.

95. As a direct and proximate result of the acts of the individual defendants detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands the following relief jointly and severally against the Defendants:

    a.    An order awarding compensatory damages for Plaintiff Omar Siler in an amount to be determined at trial;

    b.    An order awarding punitive damages in an amount to be determined at trial;

      c.      A court order, pursuant to 42 U.S.C. § 1988, that Plaintiff is entitled to reasonable attorney's fees, costs and disbursements; and

      d.      Such other and further relief as this Court may deem appropriate.

DATED:    May 15, 2015           _____s/_____
            New York, New York     CYRUS JOUBIN, ESQ.
                                              88 Pine Street, 14th Floor
                                              New York, NY 10005
                                              (703) 851-2467
                                              joubinlaw@gmail.com
                                              Attorney for Omar Siler